UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

RACHELLE BEAUBRUN, KAYLA
BUCHANAN, AMANDA DIMURO,
KRISTEN GODUTO, KARA
GUGGINO, SARA HOEHN, APRIL
JOHNSON, MAGGIE LEON,
REBECCA MORA, TERRY NAGY-
PHILLIPS, LAUREN REYNOLDS,
ANN URSINY, CRISTIAN VILLALTA-
GARCIA, KAREN WATSON,

     Plaintiffs,

v.                         Case No. 5:19-cv-00615-Oc-32PRL

UNITED STATES OF AMERICA,

     Defendant.

_____/

## UNITED STATES OF AMERICA'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, TO SEVER

# TABLE OF CONTENTS

I.      Factual and Procedural Background ........................................................... 1

II.     Legal Standards ...................................................................................... 2

        A.      Subject Matter Jurisdiction............................................................ 2

        B.      12(b)(6) ........................................................................................ 3

III.    Argument................................................................................................. 4

        A.      The PLRA bars incarcerated Plaintiffs from
                filing their claims together in the same action. .................................. 4

        B.      Plaintiffs' various claims in Count I of the complaint are subject to
                dismissal for lack of jurisdiction and for failure to state a claim. ......... 8

                1.      Plaintiffs cannot bring claims based on PREA. ...................... 9

                2.      The discretionary function exception bars Plaintiffs' claims
                        for negligent hiring, retaining, training, managing,
                        disciplining, reporting and supervising. ............................... 10

                        a.      Decisions regarding hiring, retaining, training,
                                managing, disciplining, reporting and supervising
                                involve an element of judgment or choice. ................. 12

                        b.      Plaintiffs have not cited any relevant mandatory
                                guidance that leaves no judgment or choice to
                                BOP Officials. ........................................................... 13

                        c.      Decisions regarding hiring, retaining, training,
                                managing, disciplining, reporting and supervising
                                are grounded in considerations of public policy. ......... 20

                3.      Plaintiffs have not alleged any facts to support a claim
                        for negligent hiring or negligent training.. ........................... 21

                4.      Plaintiffs cannot bring claims against the United States
                        premised on alleged failure to investigate or failure to
                        timely investigate or prosecute ......................................... 23

                5.      Plaintiffs' assertions regarding transfer of inmates and
                        access to counsel are subject to dismissal for lack of
                        jurisdiction........................................................................ 26

        C.      Section 1346(b)(2) bars the claims of six Plaintiffs............................ 28

        D.      Ms. Guggino's claims based on conduct at FCI Tallahassee
                are time- barred. ......................................................................... 32

1.   Ms. Guggino has not alleged specific facts demonstrating diligence. ........................................................................... 34

2.   Ms. Guggino has not alleged facts showing "extraordinary circumstances" continued through the period which she seeks to toll. ........................................................................ 36

IV.   Conclusion................................................................................. 37

Fourteen current and former female inmates at FCC Coleman ("Coleman Camp") bring this lawsuit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq.*, alleging former correctional officers at the Coleman Camp ("Former Officers") sexually assaulted them.  Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and the Prison Litigation Reform Act of 1995 ("PLRA"), the United States, through undersigned counsel, moves to dismiss certain of Plaintiffs' claims and to dismiss or, in the alternative pursuant to Fed. R. Civ. P. 21, to sever, the claims of Plaintiffs who were incarcerated at the time the Complaint was filed pursuant to the PLRA's prohibition on prisoners filing joint actions.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Factual and Procedural Background

On December 3, 2019, Plaintiffs filed this action against the United States.  *See* Doc. 1.  Only one filing fee was paid at the time the action was filed.  *See* Docket (Receipt No. 113A-16210191).

Plaintiffs allege the Former Officers at the Coleman Camp sexually assaulted them from approximately 2012 through 2018.  One Plaintiff also asserts that she was subjected to sexual misconduct by a former correctional officer at FCI Tallahassee, where she was housed prior to her time at the Coleman Camp.  Plaintiffs bring several claims against the United States premised on this alleged conduct.  First, Plaintiffs assert various claims for assault and battery (Count II), false imprisonment (Count III), and intentional infliction of emotional distress (Count IV) against the United States

---

[1] The United States acknowledges that dismissal on this latter basis to be without prejudice and understands that each Plaintiff may file their own separate action, subject to any other defenses and bases for dismissal the United States may have.

based on the conduct of the Former Officers, claiming each was in the course and scope of their employment when they committed the actions at issue. Second, Plaintiffs assert a variety of negligence claims combined in one count (Count I), including a negligence *per se* claim based on alleged violation of federal statutes and regulations and claims of negligent "hiring, retaining, training, managing, disciplining, reporting and supervising" based on the alleged action and/or inaction of the Former Officers' supervisors. Doc. 1 at ¶ 157. Finally, Plaintiffs assert claims against the United States based on the conduct of those individuals charged with investigating and/or prosecuting the guards identified in the complaint. *See* Doc. 1 at ¶¶ 20, 156-161 (naming "Prison Investigative Agencies"). Plaintiffs seek money damages for alleged emotional and mental anguish they have endured.

## II.     Legal Standards

### A.     Subject Matter Jurisdiction

The United States has sovereign immunity from suit unless it has expressly waived such immunity and consented to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 32 (1992); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Plaintiffs bear the burden of establishing subject matter jurisdiction and, thus, must prove an explicit waiver of immunity. *See Ishler v. Internal Revenue*, 237 F. App'x 394, 398 (11th Cir. 2007). While the FTCA provides a limited waiver of sovereign immunity, it does not apply to certain of Plaintiffs' claims because (1) the discretionary function exception bars Plaintiffs' negligence claims; (2) there is no claim under Florida law analogous to Plaintiffs' claims regarding transfer of inmates and access to counsel; (3) the United

States has not waived sovereign immunity for claims regarding alleged inadequacy of a criminal investigation or decisions whether to prosecute; and (4) as to six of the Plaintiffs, they have not alleged conduct that comes within the scope of the FTCA's waiver of sovereign immunity given they seek mental or emotional damages.

At this time, the United States only asserts facial attacks on this Court's subject matter jurisdiction to hear Plaintiffs' claims. Facial attacks are considered under a similar standard as that under Fed. R. Civ. P 12(b)(6), taking the allegations to be true as well as any matters that can be judicially noticed. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

### B.     12(b)(6)

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The following claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6): (1) Plaintiffs' claims for negligent hiring and training because there is a

complete absence of factual allegations to support their conclusory assertions; (2) Plaintiffs' claims premised on a violation of the Prison Rape Elimination Act of 2003, 42 U.S.C. §§ 15601–09 ("PREA") because PREA does not provide a private right of action; and (3) Plaintiff Guggino's claims arising out of her time at FCI Tallahassee because they are barred by the statute of limitations.

## III.   Argument

### A.   The PLRA bars incarcerated Plaintiffs from filing their claims together in the same action.

Before turning to the substance of Plaintiffs' claims, the Court must resolve the issue of the improper joinder of multiple Plaintiffs in this action.  The Eleventh Circuit has held that the PLRA prohibits multi-plaintiff inmate litigation.[2] *Hubbard v. Haley*, 262 F.3d 1194, 1196 (11th Cir. 2001); *Bowens v. Turner Guilford Knight Det.*, 510 F. App'x 863 (11th Cir. 2013) (per curiam) (unpublished); *Nowlin v. McNeil*, No. 4:19CV314-WS-HTC, 2019 WL 4492527, at *2 (N.D. Fla. Aug. 14, 2019) ("The joinder of more than one plaintiff to a prisoner action under Federal Rule of Civil Procedure 20 is prohibited"), *report and recommendation adopted*, No. 4:19CV314-WS/HTC, 2019 WL 4478800 (N.D. Fla. Sept. 18, 2019); *Haile v. McCalvin*, No. 4:17CV460-MW/CAS, 2017 WL 5588201, at *1 (N.D. Fla. Oct. 19, 2017), *report and*

---

[2] The United States acknowledges a split of authority on this issue, *see Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004) (requiring full fee for each plaintiff but allowing them to join in one action); *Hagan v. Rogers*, 570 F.3d 146, 158 (3d Cir. 2009) (same); *Lilly v. Ozmint*, No. CA 2071700-JFA-RSC, 2007 WL 2021874, at *1 (D.S.C. July 6, 2007) (requiring separate actions); *Combs v. Stevens*, No. 1:16CV9 RLW, 2016 WL 304880, at *1 (E.D. Mo. Jan. 25, 2016) (same), *judgment aff'd* (8th Cir. June 21, 2016); *Beaird v. Lappin*, No. CIV.A. 3:06-CV-0967L, 2006 WL 2051034, at *3 (N.D. Tex. July 24, 2006) (same), *Hershberger v. Evercom Inc.*, No. 07-3152-SAC, 2008 WL 45693, at *1 (D. Kan. Jan. 2, 2008) (same), but this Court is bound by the Eleventh Circuit's ruling in *Hubbard*.

4

*recommendation adopted*, No. 4:17CV460-MW/CAS, 2017 WL 5588178 (N.D. Fla. Nov. 20, 2017); *Bass v. Benton*, No. 10-14091-CIV-GRAHAM, 2010 WL 11506961, at *1 (S.D. Fla. Apr. 5, 2010), *report and recommendation adopted*, No. 10-14091-CIV, 2010 WL 11507170 (S.D. Fla. Apr. 27, 2010), *aff'd*, 408 F. App'x 298 (11th Cir. 2011).

This limitation applies to all "civil action[s]," including those brought pursuant to the FTCA. *See* 28 U.S.C. § 1915(b)(1).  In *Harris v. Garner*, the full Eleventh Circuit interpreted this same language in the PLRA's three strikes provision holding that it does not exclude "any type" of civil claims.  *Harris,* 216 F.3d 970, 985 (11th Cir. 2000) (*en banc*) ("The clear and broad statutory language does not permit us to except any type of claims, including constitutional claims."); *United States v. Jones*, 215 F.3d 467, 469 (4th Cir. 2000) (applying Section 1915 to post-conviction Rule 41(e) motion for return of property – which had already been designated a civil action in other contexts); *United States v. Wade*, 291 F. Supp. 2d 1314, 1317 (M.D. Fla. 2003) (same).

As the Eleventh Circuit has stated, "the Congressional purpose in promulgating the PLRA enforces an interpretation that each prisoner pay the full filing fee." *Hubbard*, 262 F.3d at 1197-98.  The only way to accomplish this is to require each inmate plaintiff to bring their own action.  *Daker v. Ferrero*, No. CIV.A. 1:03-CV-02481, 2007 WL 1100463, at *3 (S.D. Fla. Jan. 3, 2007) (observing that Section 1915(b)(3) precludes the collection of multiple filing fees in one action); *Smith v. Fla. Dep't of Corr.*, No. 2:06-CV-14201, 2015 WL 500166, at *2 (S.D. Fla. Feb. 4, 2015) (same).

That Plaintiffs are represented by counsel does not change this fact.  *See Garcia v. McNeil*, No. 4:07-CV-474-SPM WCS, 2010 WL 4818067, at *1 (N.D. Fla. Nov. 22,

2010)[3] ("*Hubbard* decided that since every prisoner must pay a full filing fee, and since other litigants who join together in one complaint pay only one filing fee, prisoners cannot join under Rule 20. That means that the prisoners here, who have a lawyer and who do not pursue frivolous claims, cannot join under Rule 20 in light of *Hubbard*— even if each of them pays [the filing fee]. This court is bound by *Hubbard*."). Nor is *Hubbard*'s holding limited to facially frivolous suits. *See Bowens*, 510 F. App'x 863. While there is contrary authority to *Garcia* from the district court for the Middle District of Georgia, which permitted represented inmate plaintiffs to join in one action, *see Mann v. Donald*, No. CIV.A.7 08-CV-5 (HL), 2009 WL 811574, at *9 (M.D. Ga. Feb. 24, 2009), *report and recommendation adopted*, No. CIV.A.7:08-CV-5 (HL), 2009 WL 811577 (M.D. Ga. Mar. 25, 2009), and *Coen v. Georgia Dep't of Corr.*, No. 5:16-CV-00353-MTT, 2018 WL 4365503, at *10 (M.D. Ga. Sept. 13, 2018), these cases are not as persuasive as *Garcia.*

The district court in *Mann* based its ruling on its interpretation that *Hubbard* viewed the purpose of the filing fee requirement as "to discourage totally frivolous lawsuits brought by unlearned pro se litigants." *Mann*, 2009 WL 811574, at *9. However *Hubbard* never once mentions the plaintiffs' *pro se* status as a basis for its decision. Rather, the Court found that the purpose, "enforces an interpretation that

---

[3] As recognized by the district court in *Garcia*, while there have been two Eleventh Circuit cases that involved multiple prisoner suits since the Eleventh Circuit issued its opinion in *Hubbard*, it does not appear the issue was ever raised in those cases. *Garcia*, 2010 WL 4818067, at *1 (citing *Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004)); *Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010)). Thus, neither undermines the Eleventh Circuit's holding in *Hubbard*, particularly in light of the Eleventh Circuit's subsequent opinion in *Bowens*, 510 F. App'x 863.

*each* prisoner pay the full filing fee." *Id.* at 1197-98 (emphasis added).  In addition, the

Eleventh Circuit's subsequent ruling in *Bowens*, 510 F. App'x 863, expressed that its

holding in *Hubbard* was not limited to frivolous actions.

While it is not completely clear that the district court in *Coen* actually reached

a decision on the issue, the court appeared disinclined to prohibit joinder on the basis

of Section 1915(b)(1) because it felt so ruling might bar the use of Rule 23 (class

actions) by prisoners.  *Coen*, 2018 WL 4365503, at *10.  However, *Garcia*, found no

basis to treat Rule 23 any different than Rule 20, in that the Eleventh Circuit found

that the later enacted PLRA, to the extent it was inconsistent with Rule 20 repeals that

rule.  *See Hubbard*, 262 F.3d at 1198 (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1489

(11th Cir. 1997) ("A statute passed after the effective date of a federal rule repeals the

rule to the extent that it actually conflicts.")); *see also Daker*, 2007 WL 1100463, at *3

("The same rationale applies here: Rule 24, insofar as it operates to circumvent the

PLRA's requirement that prisoners tender a filing fee, has been repealed by the

PLRA....").

In sum, both of these decisions from the Middle District of Georgia, unlike the

*Garcia* decision, disregarded the Eleventh Circuit's guidance in *Hubbard* the guiding

reference is the text of the statute.  *See Hubbard*, 262 F.3d at 1197 ("This court has

repeatedly stated that '[w]e begin our construction of [a statutory provision] where

courts should always begin the process of legislative interpretation, and where they

often should end it as well, which is with the words of the statutory provision.'") (citing

*Harris*, 216 F.3d at 972).  The plain text of Section 1915(b)(1) of the PLRA, which the

Eleventh Circuit found to be unambiguous, contains no exception for represented inmates. *See Garcia*, 2010 WL 4818067, at *1.

Plaintiffs filed the complaint December 3, 2019. *See* Doc. 1. At that time, Plaintiffs, with the exception of Beaubrun, Johnson, Mora, and Watson, were incarcerated. *See* Doc. 1 at ¶¶ 1-14; Exhibit 1 (Inmate Locators). None of these incarcerated inmates can participate as parties in the present action and must instead bring their own, separate civil action, and either pay the filing fee or apply for *in forma pauperis* ("IFP") status. In the alternative, the Court should sever Plaintiffs' claims other than Beaubrun, Johnson, Mora and Watson pursuant to Fed. R. Civ. P. 21, and require each Plaintiff to either pay the filing fee or apply for IFP status.

**B.      Plaintiffs' various claims in Count I of the complaint are subject to dismissal for lack of jurisdiction and for failure to state a claim.**

Plaintiffs assert numerous claims against the United States under the veil of "negligence and negligence *per se*" for various alleged negligent conduct by both supervisory officials at the prison as well as law enforcement officials (who Plaintiffs refer to as "Prison Investigative Agencies").[4]  For the following reasons each of those claims is subject to dismissal.

---

[4] Many of Plaintiffs' counts are actually a combination of claims founded on separate transactions or occurrences. The United States has addressed them as separate claims in this motion despite the manner of pleading. However should any claims remain after this motion, proceeding forward, the manner of Plaintiffs' pleading could make tracking what claims remain and by which Plaintiffs difficult to track. *See Chiron Recovery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. 9:18-CV-81761, 2019 WL 7584968, at *7 (S.D. Fla. Aug. 9, 2019)*, report and recommendation adopted in part, rejected in part sub nom. Chiron Recovery Ctr. v. United Health Grp., Inc.*, No. 9:18-CV-81761, 2019 WL 7584966 (S.D. Fla. Sept. 9, 2019). Pursuant to Fed. R. Civ. P. 10(b) those claims should all be set forth in separate counts, not lumped together in one omnibus "negligence" or "assault" count involving multiple Plaintiffs facing often times discrete conduct form different correctional officers. In the event Plaintiffs are permitted to

## 1.   Plaintiffs cannot bring claims based on PREA.

Plaintiffs assert that PREA and its implementing regulations provide the pertinent duties to support claims of negligence and negligence *per se*.  Doc. 1 at ¶ 161 ("breached their duties to Plaintiffs under PREA as follows …..").  Congress enacted PREA to address the problem of rape in prison by creating national standards to prevent, detect, and respond to prison rape.  *See* 42 U.S.C. § 15601; *see Diamond v. Allen*, No. 7:14-CV-124 HL, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014).  Its main focus is upon compiling statistics, developing standards, and regulating federal funding in an effort to combat prison rapes.  *Gibson v. Kent*, No. 3:15CV458/MCR/EMT, 2016 WL 7384646, at *2 (N.D. Fla. Nov. 18, 2016), *report and recommendation adopted*, No. 3:15CV458/ MCR/EMT, 2016 WL 7379002 (N.D. Fla. Dec. 20, 2016) (citing 42 U.S.C. §§ 15602, 15605).  PREA does not provide a private right of action.  *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015); *Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); *Diamond*, 2014 WL 6461730, at *4; *Aitken v. Nobles*, No. 5:13–cv–216, 2013 WL 3441116, at *2 (N.D. Fla. July 9, 2013); *Jamerson v. Jones*, No. 3:18CV1558-LC-CJK, 2018 WL 4006855, at *2 (N.D. Fla. Aug. 8, 2018), *report and recommendation adopted*, No. 3:18CV1558-LC-CJK, 2018 WL 4006795 (N.D. Fla. Aug. 22, 2018).  Nor does it otherwise confer "any extra rights outside of the normal prison grievance system."  *Diamond*, 2014 WL 6461730, at *4 (citing *Mosley v. Medlin*, No. CV 313–086, 2014 WL 3110027, at *9 (S.D.Ga. July 7, 2014); 42 U.S.C. §§ 15601–15609).  Nor can PREA be used as a basis for bringing an FTCA claim.

---

replead any of their claims in response to this motion, the United States requests that they be required to set forth each separate claim as to each individual Plaintiff in separate counts.

*Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991) (citing *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir. 1983)).  *See also Johnson v. Sawyer*, 47 F.3d 716, 728 (5th Cir. 1995) (federal statutes and regulations do not establish a duty owed to a Plaintiff under state law); *Lowe v. United States*, No. 1:11-CV-02745-JEO, 2014 WL 2740580, at *2 (N.D. Ala. June 17, 2014).

The United States is liable under the FTCA only if a similarly situated private employer would be liable for such an act or omission under the law of Florida.  *Howell*, 932 F.2d at 917.  Accordingly, Plaintiffs' negligence *per se* claims based on PREA are subject to dismissal; only negligence claims based on a duty established under Florida law can proceed.  The Court must evaluate whether Plaintiffs have alleged valid claims of negligence under Florida law separate and apart from their reference to PREA.

> **2.    The discretionary function exception bars Plaintiffs' claims for negligent hiring, retaining, training, managing, disciplining, reporting and supervising.**

The FTCA does not waive sovereign immunity for claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Douglas v. United States*, 814 F.3d 1268, 1273 (11th Cir. 2016). Congress designed this limitation, known as the discretionary function exception, to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  The discretionary function exception "marks the boundary

between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense,* 467 U.S. 797, 808 (1984). The discretionary function exception must be strictly construed in favor of the United States. *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

Plaintiffs bear the burden to "prove that the discretionary function exception [to the FTCA] does not apply" when the United States asserts that the exception bars their claims. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002); *Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015). Because this is a facial challenge to jurisdiction, the Court must assess whether Plaintiffs have made sufficient factual allegations to take their claims outside the discretionary function exception. *Willett v. United States*, 24 F. Supp. 3d 1167, 1179 (M.D. Ala. 2014).

A two-pronged test determines application of the discretionary function exception. First, a court determines whether the alleged negligent or wrongful act of a federal employee involved "an element of judgment or choice." *Douglas*, 814 F.3d at 1273 (quoting *Gaubert*, 499 U.S. at 322). If the "challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice," the discretionary function exception does not apply. *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).

If the first prong of the test is satisfied, the second prong requires that the challenged decision be of "the kind that the discretionary function exception was designed to shield." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Under that

prong, a court determines if the discretionary conduct at issue is "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *Douglas*, 814 F.3d at 1273 ("Second, if the conduct at issue involves the exercise of a judgment, [the Court] must determine whether that judgment is grounded in considerations of public policy."). In making its determination, a court should "not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." *Ochran v. United States*, 117 F.3d 495, 500 (11th Cir. 1997). Instead, it should "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. In fact, even if the decision is an abuse of the discretion granted, the exception will apply. *Ochran*, 117 F.3d at n.2; 28 U.S.C. § 2680(a).

Applying the two-pronged test here demonstrates that the discretionary function exception bars Plaintiffs' FTCA claims for negligent hiring, retaining, training, managing, disciplining, reporting and supervising. *See* Doc. 1 at ¶ 157.

### a.   Decisions regarding hiring, retaining, training, managing, disciplining, reporting and supervising involve an element of judgment or choice.

Courts have consistently held that governmental action regarding employment and termination are an exercise of policy judgment and fall within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Brown v. United States*, No. 8:14-CV-1423-T-27AEP, 2015 WL 12856787, at *2 (M.D. Fla. Nov. 20, 2015); *see also LeRose v. United States*, 285 F. App'x 93, 97 (4th Cir. 2008); *Sydnes v. United States*, 523 F.3d 1179, 1185-86 (10th Cir. 2008); *Bolduc v. United States*, 402 F.3d

50, 60–62 (1st Cir. 2005); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997); *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009); *Parker v. United States*, 500 F. App'x 630, 631-32 (9th Cir. 2012); *Fountain v. United States*, No. CV 114-127, 2016 WL 1529903, at *3 (S.D. Ga. Apr. 14, 2016). Similarly, "there is no doubt that BOP exercises discretion in how it trains its employees, meeting the first part of the two-part test." *Echevarria-de-Pena v. United States*, No. 12-22248-CIV, 2013 WL 616932, at *4 (S.D. Fla. Feb. 19, 2013) (citing *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005); *Gager v. United States*, 149 F.3d 918, 920 (9th Cir. 1998)). Likewise supervision of BOP employees "involves a large amount of decision making and balancing of competing objectives." *Dudley v. United States*, No. 4:19-CV-317-O, 2020 WL 532338, at *12 (N.D. Tex. Feb. 3, 2020); *see also Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("allegedly negligent and reckless employment, supervision and training" of government employees "fall squarely within the discretionary function exception").

Because, these types of decisions generally involve an element of judgment or choice, Plaintiffs must show an applicable mandatory regulation or policy that allowed no judgment or choice, which takes specific conduct outside the exception. As explained below, they have failed to do so.

> **b.    Plaintiffs have not cited any relevant mandatory guidance that leaves no judgment or choice to BOP Officials.**

Neither PREA itself nor 18 U.S.C. § 4042, which sets forth generally the duties of the BOP, provide the kind of mandatory regulation or policy that allows no

judgment or choice.  *See Tilga v. United States*, No. CV 14-256 JAP/RHS, 2014 WL 12783121, at *15 (D.N.M. Dec. 5, 2014) (holding that PREA "leaves the agency substantial discretion in applying the PREA and in determining the best measures to combat sexual abuse in a prison setting"); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (explaining that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception").

Plaintiffs also cite to certain of the DOJ Regulations enacted under PREA, found in Part 115 of Title 28 of the Code of Federal Regulations—28 C.F.R. §§ 115.11, .13, .15, .17, .43, .61, .67 and .76.  Doc. 1 at ¶ 161.  A review of the regulations and their implementing history reveals that while there are instances of mandatory language in portions of them, they leave significant discretion with BOP facilities.  *See Tilga*, 2014 WL 12783121, at *16; *Dudley*, 2020 WL 532338, at *12; *Baynes v. United States*, No. 115CV1604LMBTCB, 2016 WL 4492807, at *12 (E.D. Va. Aug. 25, 2016); *Doe v. United States*, No. CIV. 12-00640 ACK, 2014 WL 7272853, at *10 (D. Haw. Dec. 17, 2014) (citing draft PREA standards that were substantially similar to the final PREA regulations).

Nevertheless, even if some of the regulations Plaintiffs cite arguably contain mandatory language that leaves no choice for discretion, Plaintiffs bear the burden to plead facts sufficient to take the alleged conduct outside of the discretionary function exception.  *OSI, Inc.*, 285 F.3d at 951.  Plaintiffs' cursory allegations are insufficient to meet this burden.  Plaintiffs' assertions regarding specific violations of PREA and its

regulations are in large part no more than references to the regulatory sections with little more than a conclusory phrase that the provision was violated.  The district Court in *Tilga,* faced with similar vague allegations of violations of PREA, stated as follows:

> Although the PREA and its related regulations require the agency to take certain actions, the language of the statute and regulations allow an agency significant discretion in how best to prevent incidents of sexual abuse at a particular facility.  Plaintiffs have made, at most, generalized allegations regarding violations of the PREA.  The allegations are vague with respect to whether Plaintiffs contend that the BOP failed to hire a "PREA coordinator," as required by the PREA, or if they allege that the BOP has not developed a written plan in accordance with the PREA. . . .  Although Plaintiffs allege the BOP failed to "follow through with any attempt to truly monitor" sexual misconduct at Dismas, Plaintiffs' allegations are too general to raise their claims, based on the PREA, from "conceivable to plausible."

*Tilga*, 2014 WL 12783121, at *16.  Moreover, even though some of the regulations Plaintiffs cite may have mandatory language that could be interpreted to constrain some aspects of BOP Supervisory Officials conduct (as described below), Plaintiffs' allegations are insufficient to allege violations of such mandatory guidance.

While Section 115.11 does require that BOP have a written policy and that it designate PREA coordinators and compliance managers, the Section does not specify what has to be in the policy, leaving broad discretion to the agency on what to include and how to implement the policy.  Nor has Plaintiff alleged that BOP failed to designate personnel or that it does not have the required policy.  Accordingly, this section does not take any of Plaintiffs' claims outside the discretionary function exception.  *See Tilga*, 2014 WL 12783121, at *16 (analyzing the same requirements under Section 115.211 which covered a different type of facility).

15

Plaintiffs cite Section 115.13 to assert that BOP was required to take certain actions regarding monitoring of one-on-one inmate/officer contact, specifically by insufficient use of video surveillance.  Doc. 1 at ¶ 161.  However, the only mandatory type language in this section requires that each facility develop a staffing plan; it does not impose any mandatory requirements for any specific levels of staffing or video surveillance.   In fact, this section provides various factors to take into consideration when making such determinations. *See Doe*, 2014 WL 7272853, at *10 (finding draft of same section with substantially the same language left discretion to the facility); *see also* National Standards To Prevent, Detect, and Respond to Prison Rape, 77 FR 37106-01 at 37108, 37119-37120 (staffing), 37125-26 (video).   Again, courts accord prison officials substantial deference in the exercising of their professional judgment in administering the order, discipline and security of prisons. *See Beard v. Banks*, 548 U.S. 521, 528 (2006).   Accordingly, this provision does not bring BOP's supervision of the Former Officers outside the scope of the discretionary function exception.

While Section 115.15 does speak in mandatory terms, prohibiting cross-gender searches or pat downs absent exigent circumstances, Plaintiffs have not actually alleged that the Coleman Camp failed to implement a policy required by Section 115.15 or that BOP supervisors knowingly or negligently allowed violations of pat down or strip search policies to occur.  Plaintiffs have alleged various instances of sexual assault by male Former Officers, they have not alleged that they were subjected to security related pat downs and searches.  Rather, their contentions are that they were sexually assaulted unrelated to any security purpose.  Accordingly, this provision

16

does not bring BOP's supervision of the Former Officers outside the scope of the discretionary function exception.

While Section 115.17 contains mandatory language regarding hiring and promotion of Officers, it does not contain any provisions regarding retention as Plaintiffs allege.[5]  As stated below, in section III.B.3., Plaintiffs have not made any factual allegations that support a claim that anyone involved in the hiring process was aware of specific conduct that violates this section at the time any of the Former Officers were hired (or in fact that these regulations were in force when they were hired in the first instance), or that any were actually promoted at all, much less in the face of such knowledge, thus, this section is inapplicable to the claims in this case, and does not take Plaintiffs' claims outside the discretionary function exception.

Section 115.43 places restrictions on when inmates can be placed in involuntary segregated housing. However, the regulation also includes language that adds discretion to decisions regarding segregated housing for victims of sexual abuse, allowing it if BOP determines other alternatives are insufficient, setting a time limit that is "ordinarily" applicable, and requiring that access to programs be continued "to the extent possible."  As noted in the implementing language of the rule, these decisions are all subject to "administrative assessment," National Standards to Prevent, Detect, and Respond to Prison Rape, 77 FR 37106-01, 37154, and thus leave

---

[5] Plaintiffs also misleadingly contend this provision concerns instances where an employee "may" have engaged in sexual misconduct; but that is not what the regulations says at all. Rather it applies where the potential employee *has* engaged in sexual misconduct, not where he or she "may have."

sufficient discretion with BOP that this regulation does not take Plaintiffs' claims outside of the discretionary function exception.[6]

Plaintiffs allege that Section 115.61 imposes a mandatory duty for supervisory officials to report suspicion of sexual abuse.  Doc. 1 at ¶ 161.  Section 115.61contains language that could be considered mandatory: a requirement to implement a policy to require reporting (subsection (a)), and a requirement that the facility report any allegations of sexual abuse to the facility's designated investigators (subsection (e)). Plaintiffs have not alleged, however, that BOP did not implement a policy to comply with subpart (a), thus that requirement is not sufficient to take Plaintiffs' claims outside the discretionary function exception.  *See Tilga*, 2014 WL 12783121, at *16.  Nor has Plaintiff identified any allegation of sexual abuse that was not reported to the Coleman Camp's designated investigators.  The only specific allegation in the Complaint about an individual allegedly failing to report anything was that Ms. Buchanan alleges she told Dr. Ojeda, the staff psychologist about Former Officer Palomares in November 2017.  Doc. 1 at ¶ 66.  However, Plaintiffs do not allege that Dr. Ojeda did not report this allegation to the proper individuals within BOP.  *Id.*  In fact, Plaintiffs allege that in 2017, Dr. Ojeda and Special Investigative Service Officers were in fact investigating sexual misconduct by male officers at Coleman Camp, *id.* at 82, and assert that numerous investigations of the Former Officers occurred, indicating that allegations were in fact referred to Coleman Camp's designated investigators, *id.* at ¶ 44. Accordingly, Plaintiffs have not sufficiently alleged facts that would indicate a

---

[6] Of note, only one Plaintiff appears to allege that she was placed in administrative housing, when she was at FCI Tallahassee and the facility in Alabama.  *See* Doc. 1 ¶¶ 92, 95.

violation of this provision's reporting requirements, even if they are deemed mandatory.  Thus, Plaintiffs have not sufficiently alleged facts that would indicate this section takes Plaintiffs' claims for negligent reporting outside the discretionary function exception.

Section 115.67 concerns protections against retaliation for inmates and staff who report sexual abuse.   Similar to other provisions, this section mandates a policy be implemented, but leaves discretion to BOP as to what to include in that policy and how to implement it.  Where a regulation leaves elements of discretion and choice, it does not preclude the application of the discretionary function exception.  *See Joiner v. United States*, No. 3:17-CV-2692-S, 2018 WL 6727085, at *5 (N.D. Tex. Dec. 21, 2018), aff'd, 946 F.3d 810 (5th Cir. 2020).  Thus this regulation does not take Plaintiffs' claims of retaliatory transfers (to the extent they are actually making one on behalf of the Plaintiffs themselves[7]) outside of the discretionary function exception.

---

[7] Plaintiffs allege that certain procedures to transfer inmates who report potential sexual abuse breach a duty owed to them.  *See* Doc. 1 at ¶ 159.  However, Plaintiffs have not actually alleged any of them were subjected to a specific retaliatory transfer themselves.  Even if this assertion did state a claim under Florida law (which is doubtful, *see infra* section II.B.5.), the claim would be barred by the discretionary function exception to the FTCA.  Any decision to transfer an inmate to another facility is grounded in the discretion afforded prison officials to maintain a safe environment and to attempt ensure the safety of the inmate by separating them from the alleged perpetrator.  *Enlow v. United States*, 161 F. App'x 837, 840-41 (11th Cir. 2006) ("Considerations leading up to the decision to transfer are as discretionary as the ultimate decision to transfer, absent a policy dictating otherwise.") (citing *Cohen*, 151 F.3d at 1340); *Blank v. United States*, No. 4:14-CV-502-O, 2016 WL 8116679, at *4 (N.D. Tex. Dec. 2, 2016) (collecting cases), *aff'd*, 713 F. App'x 400 (5th Cir. 2018); *Tate v. United States*, No. CV 15-9323-FMO (JPR), 2018 WL 8060716, at *12 (C.D. Cal. Dec. 11, 2018), *report and recommendation adopted*, No. CV 15-9323-FMO (JPR), 2019 WL 6790684 (C.D. Cal. Aug. 28, 2019).  In fact, 18 U.S.C. § 3621(b) gives BOP broad authority in designating and transferring inmates to a particular facility.  *Panah v. United States*, No. CV0906535GAFPLAX, 2011 WL 13124666, at *4 (C.D. Cal. Aug. 25, 2011).  *See also Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) (holding that prison administrators should be afforded wide-ranging deference in implementing and executing policies because discretion is needed to preserve internal discipline and maintain

Section 115.76 mandates that staff shall be subject to disciplinary sanctions, and even sets presumptive sanctions for violating BOP sexual abuse polices.  However, the regulation still leaves BOP discretion as to how to implement that discipline.  Thus, this regulation cannot overcome the discretionary function exception for Plaintiffs' failure to discipline claims.

Accordingly, because these regulations, while containing some mandatory language, still leave BOP officials with elements of discretion in their implementation, they do not take Plaintiffs' claims outside of the discretionary function exception.  Further, even if some of the language could be viewed as mandatory, leaving BOP with no choice, Plaintiffs' allegations as to what conduct allegedly violates them are simply too conclusory to demonstrate a plausible claim falling outside the discretionary function exception.  *See Tilga*, 2014 WL 12783121, at \*16.

   **c.**   **Decisions regarding hiring, retaining, training, managing, disciplining, reporting and supervising are grounded in considerations of public policy.**

As to the second prong of the analysis, decisions on hiring, disciplining, supervising, training, and the like, Courts have consistently found those decisions to be grounded in considerations of public policy, particularly in the prison context, because they necessarily involve the allocation of economic resources and require the balancing of competing objectives, including available resources, proper classification of inmates, and appropriate security levels.  *See Echevarria-de-Pena*, 2013 WL 616932,

---

institutional security).   In fact 28 C.F.R. § 115.67(b), cited in Plaintiffs' complaint, recognizes that transfers are an appropriate tool to use to protect an inmate when they are a victim of sexual assault.

at *4 (noting decisions regarding how to train employees necessarily involves the allocation of BOP's economic resources); *Baynes*, 2016 WL 4492807, at *11 (noting consideration of these factors "are inherently grounded in social, political, and economic policy"); *Holy See*, 557 F.3d at 1084 ("[T]he decision of whether and how to retain and supervise an employee, as well as whether to warn about his dangerous proclivities, are the type of discretionary judgments that the exclusion was designed to protect."); *Dudley*, 2020 WL 532338, at *12.

> As the district court for the District of Columbia recently explained,
>
> > Decisions regarding supervision also "involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety." [*Burkhart*, 112 F.3d at 1217]. Likewise, "[t]he extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." *Id.* The D.C. Circuit accordingly found that these decisions were "surely among those involving the exercise of political, social, or economic judgment," and thus shielded by sovereign immunity under the Compact. *Id.*

*Rogers v. WMATA*, No. CV 19-1794 (CKK), 2019 WL 6312010, at *3 (D.D.C. Nov. 25, 2019).   Accordingly, decisions regarding hiring, retaining, training, managing, disciplining, reporting and supervising are grounded in public policy considerations, meeting the second prong of the discretionary function exception.   Thus, Plaintiffs' negligence claims premised on that conduct are subject to dismissal.

### 3.   Plaintiffs have not alleged any facts to support a claim for negligent hiring or negligent training.

Even if the discretionary function exception did not bar Plaintiffs' negligent hiring and training claims, Plaintiffs nonetheless fail to make sufficient factual

allegations to state a claim.  The FTCA "authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  *United States v. Olson*, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)).  For purposes of an FTCA claim, the "law of place" means "the law of the state" in which the alleged tort occurred, here Florida.  *Meyer*, 510 U.S. at 478.

Plaintiffs make a conclusory allegation that the supervisory officials breached their duties to Plaintiffs by "negligently hiring, retaining, training, managing, disciplining, reporting and supervising" the Former Officers.  Doc. 1 at ¶ 157.  The Complaint contains no factual allegations to support a claim that any of the Former Officers were negligently hired or trained.  Plaintiffs "cannot state a claim for negligent hiring, retention, training or supervision based on boilerplate allegations."  *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-CV-23733-UU, 2016 WL 6330587, at *3 (S.D. Fla. Oct. 27, 2016); *see also Twombly*, 550 U.S. at 555 (pleadings must contain "more than labels and conclusions ....").

Under Florida law, negligent hiring occurs when, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background."  *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (citation omitted); *NCL (Bahamas) Ltd.*, 2016 WL 6330587, at *3.  Plaintiffs do not allege that any BOP employees had knowledge of any improper conduct by any of the Former Officers prior to the time

22

they were hired by BOP.  Accordingly, Plaintiffs' claim for negligent hiring is subject to dismissal for failure to state a claim.

Nor does the Complaint contain any factual allegations that would demonstrate a plausible claim that the Former Officers were negligently trained. Under Florida law, to state a claim for negligent training, a plaintiff must allege facts that demonstrate that a defendant was negligent in the implementation or operation of a training program.  *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005); *NCL (Bahamas) Ltd.*, 2016 WL 6330587, at *4.  Simply alleging that improper conduct happened and making a conclusory assertion that the employees were negligently trained does not pass muster under *Iqbal* and *Twombly*.  *NCL (Bahamas) Ltd.*, 2016 WL 6330587, at *3-*4.  Thus, Plaintiffs' claim for negligent hiring is subject to dismissal for failure to state a claim.[8]

### 4.    Plaintiffs cannot bring claims against the United States premised on alleged failure to investigate or failure to timely investigate or prosecute.

Plaintiffs assert that they are basing liability against the United States, in part, on the failure of law enforcement officials to either investigate at all, or timely investigate or prosecute the Former Officers.  Doc. 1 at ¶¶ 20, 22.  However, decisions by law enforcement to investigate, prosecute or enforce are committed to agency

---

[8] The United States will address the substance of Plaintiffs' negligent supervision, retention, failure to discipline and failure to report claims on summary judgment in the event these claims survive the discretionary function exception.  Under Florida law, "negligent supervision and retention occurs when during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicates his unfitness and the employer fails to take further action such as investigation, discharge, or reassignment." *Wheeler v. Blackbear Two, LLC*, No. 6:12-CV-583-ORL-37, 2012 WL 3596128, at *2 (M.D. Fla. Aug. 21, 2012) (quoting *Martinez v. Pavex Corp.*, 422 F.Supp.2d 1284, 1298 (M.D. Fla. 2006)).

discretion by law and not subject to challenge by individuals through suit. *See Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985); *Maine v. Taylor*, 477 U.S. 131, 137 (1986); *United States v. Hall*, 559 F.2d 1160, 1163 (9th Cir. 1977). Courts addressing this issue have uniformly rejected claims that various statutory and constitutional provisions provide for a waiver of sovereign immunity in such circumstances. *See Roberts v. Hartz*, 113 F. App'x 306, 313 (10th Cir. 2004) (FBI); *Woody v. Cronic*, 401 F. App'x 509, 512 (11th Cir. 2010) (holding the plaintiff had "no justiciable right in the prosecution" of a prison guard and thus could not "state a claim based on the officers' failure to prosecute or discipline" the guard). *See also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Smith v. Shook*, 237 F.3d 1322, 1324 (11th Cir. 2001) (dismissing failure to prosecute claim for lack of standing); *Garcia v. Miami Beach Police Dep't*, 336 F. App'x 858, 859 (11th Cir. 2009) (same).

Plaintiffs' claims fall outside the FTCA's waiver of sovereign immunity because claims premised on a failure of law enforcement to investigate or prosecute are also barred by the discretionary function exception to the FTCA contained in 28 U.S.C. § 2680(a). As to the first prong of the analysis, decisions on whether and when to conduct criminal investigations and whether or when to prosecute are prototypical of the type of conduct that involves "judgment or choice." *See Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993), *aff'd*, 123 F.3d 1435 (11th Cir. 1997); *Bedell v. United States*, No. 1:16-CV-00019, 2016 WL 2647577, at *5 (M.D. Pa. May 10, 2016) ("The decision to investigate or not investigate a crime involves an element of judgment or choice. Furthermore, no federal statute, regulation, or policy requires the

24

FBI to take a particular course of action relating to investigating crimes which are reported to it."), *aff'd*, 669 F. App'x 620 (3d Cir. 2016); *see also Johnson v. United States, Dep't of Justice*, 694 F. App'x 748, 749 (11th Cir. 2017) (discretionary function exception "shields the government from liability arising from its decisions with respect to which laws to enforce or not").  Nor have Plaintiffs cited "a mandatory regulation or policy that allowed no judgment or choice" with respect to any decisions on whether or how to investigate or prosecute.  *Autery*, 992 F.2d at 1526.  To the contrary Congress has granted these investigative agencies broad discretionary authority in conducting their investigations.  *See Gant v. F.B.I.*, 992 F. Supp. 846, 848 (S.D.W. Va.), *aff'd*, 155 F.3d 558 (4th Cir. 1998) (noting 28 U.S.C. § 535(a) is discretionary); *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 61 (3d Cir. 2003) (noting broad discretion provided IGs by 5 U.S.C. App 3 § 2).

As to the second prong of the analysis, Courts have recognized that the decision of whether and when to investigate allegations of criminal activity are susceptible to policy analysis.  *Thacker v. United States*, No. 306CV145MCREMT, 2006 WL 2644928, at *4 (N.D. Fla. Sept. 13, 2006) (noting decisions "require balancing competing concerns of limited law enforcement and prosecutorial resources and public safety"); *Reeves v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 809 F. Supp. 92, 95 (N.D. Ga. 1992) (holding that decisions on how to investigate reports of potential criminal activity "require[] a policy judgment regarding choices on how to balance the ATF's goals and resources"), *aff'd sub nom. Reeves v. United States*, 996 F.2d 1232 (11th Cir. 1993); *Kelly v. United States*, 924 F.2d 355, 362 (1st Cir. 1991) ("Since decisions to

investigate, or not, are at the core of law enforcement activity, the bureau chiefs' challenged conduct involved precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard."); *Sloan v. United States Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 762 (D.C. Cir. 2001) ("[T]he sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice.").

Accordingly, because decisions whether and when to investigate and prosecute potential criminal activity meet both prongs of the discretionary function exception Plaintiffs' claims premised on the conduct of the "Prison Investigative Agencies" should be dismissed for lack of jurisdiction.

### 5. Plaintiffs' assertions regarding transfer of inmates and access to counsel are subject to dismissal for lack of jurisdiction.

Congress' chief intent in drafting the FTCA was not "to create new causes of action" but "simply to provide redress for ordinary torts recognized by state law." *Howell*, 932 F.2d at 917. It was not "intended as a means to enforce federal statutory duties." *Id.* Indeed, "even where specific behavior of federal employees is required by statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability." *Sellfors*, 697 F.2d at 1367 (internal citation and quotation omitted)

While it is not clear that Plaintiffs are bringing standalone claims for retaliatory transfers or for allegedly blocking access to counsel, if they were, Plaintiffs cannot point to any analogous claim under Florida law against a private party for either of the actions being alleged in paragraphs 159 or 160 of the Complaint. *See Lopez v. United*

26

*States*, 656 F. App'x 957, 966 (11th Cir. 2016) (holding a claim for First Amendment retaliation is not redressable through the FTCA).  In fact, First Amendment retaliation and access to attorney claims, if cognizable at all,[9] are properly viewed as constitutional tort claims, which are not addressed through the FTCA and for which the United States has not waived sovereign immunity.  *Nnaji v. United States*, No. 4:07CV00937BSM/ HDY, 2008 WL 4183311, at *2 (E.D. Ark. July 24, 2008), *report and recommendation adopted in part, rejected in part* on other *grounds*, No. 4:07CV00937BSM, 2008 WL 4183310 (E.D. Ark. Sept. 8, 2008); *Medina v. United States*, No. 1:19-CV-74-FDW, 2019 WL 5799329, at *4 (W.D.N.C. Nov. 5, 2019); *Harshman v. Beistline*, No. 18-CV-05430-EMC, 2019 WL 3934907, at *3 (N.D. Cal. Aug. 20, 2019); *Dorsey v. Peter*, No. 3:19-CV-0113, 2020 WL 881134, at *11 (M.D. Pa. Feb. 21, 2020).

Plaintiffs have not cited any other authority that would provide for a waiver of sovereign immunity for such claims. Accordingly, these two claims for "negligence"[10] against the United States are subject to dismissal for lack of subject matter jurisdiction. *Fernandez*, 766 F. App'x at 788-89.

---

[9] After *Ziglar v. Abassi*, —— U.S. ——, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017), this district has held on several occasions that there is no *Bivens* suit for money damages for First Amendment access to the courts claims.  *Taylor v. Lockett*, No. 517CV00023OC02PRL, 2019 WL 764023, at *10 (M.D. Fla. Feb. 21, 2019); *McRae v. Lockett*, No. 5:17-CV-299-OC-02PRL, 2019 WL 2303264, at *7 (M.D. Fla. May 30, 2019).

[10] It should be noted that each of these claims appear to actually assert intentional conduct, rather than negligence.

**C.     Section 1346(b)(2) bars the claims of six Plaintiffs.**

Waiver of the United States' sovereign immunity pursuant to the FTCA is subject to several requirements and limitations.   One of those is found in Section 1346(b)(2), which provides that:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injuries suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

As an exception to the FTCA's waiver of sovereign immunity, Section 1346(b)(2) is to be strictly construed in favor of the government.  *Zelaya v. United States*, 781 F.3d 1315, 1326-27 (11th Cir. 2015).  Subparagraph (2) of 18 U.S.C. § 2246 defines a "sexual *act*" to mean:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; [11]

---

[11] Because all of the Plaintiffs in this action are over the age of 16, only the provisions contained in Section 2246(2)(A)-(C) are relevant.

18 U.S.C. § 2246(2).  By contrast, the term "sexual *contact*" means, "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* § 2246(3).  In other words, unless the plaintiff is under the age of 16, which is not the case here, the conduct described in Section 2246(3) does not fit the definition of the term "sexual act" for purposes of the FTCA.

Plaintiffs Goduto, Buchanan, Hoehn, Ursiny, Villalta-Garcia, and Guggino have asserted mental and emotional injuries in the Complaint.  *See* Doc. 1 at ¶¶ 67 (Buchanan); 83 (Goduto); 104 (Hoehn); 143 (Ursiny); 149 (Villalta-Garcia); 98 (Guggino).  They have not, however, alleged specific physical injuries.  While each of these Plaintiffs have asserted in conclusory fashion that they suffered from "physical trauma" as a result of the alleged conduct, this type of undeveloped conclusory assertion is insufficient to meet the standard of "physical injury" in the Eleventh Circuit.  A prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries "that are greater than *de minimis*."  *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002).  While "[t]he meaning of the phrase 'greater than *de minimis*,' however, is far from clear," *Chatham v. Adcock*, 334 F. App'x 281, 284 (11th Cir. 2009), courts in this Circuit have concluded that where the conduct at issue meets the definition of sexual contact, but not sexual act, and does not result in serious or long lasting physical injuries, a plaintiff has not demonstrated a physical injury above the *de minimis* level.  *See Graham v. Elliott*, No.

1:17-CV-68-MW-GRJ, 2018 WL 3625863, at *3 (N.D. Fla. June 27, 2018), *report and recommendation adopted*, No. 1:17CV68-MW/GRJ, 2018 WL 3622810 (N.D. Fla. July 30, 2018).   Recently, the Eleventh Circuit pointed out that sexual assault claims without physical injuries can now be actionable due to the addition of the "sexual act" language that was added to the PLRA (and FTCA) in 2013.  *Sconiers v. Lockhart*, 946 F.3d 1256, 1267 (11th Cir. 2020) ("And to the extent that the question remains, such claims are also specifically allowed in the absence of a physical injury under the current version of the PLRA.").

Thus, the pertinent inquiry, is whether each of these individual Plaintiffs were (1) convicted of a felony, (2) incarcerated at the time suit was filed,[12] and (3) have asserted claims premised on sexual *acts*.  If the alleged conduct does not fit within the definition of a sexual act, the claims are subject to dismissal.  *See Graham*, 2018 WL 3625863, at *3; *Jamison v. United States*, No. 1:15-CV-01678, 2016 WL 7670690, at *5 (W.D. La. Sept. 26, 2016), *report and recommendation adopted*, No. 1:15-CV-01678, 2017 WL 89485 (W.D. La. Jan. 9, 2017); *Turner v. United States*, No. CIV. 6:13-153-GFVT, 2013 WL 6813902, at *1-*2 (E.D. Ky. Dec. 20, 2013).  *See also Mattison v. Williams*, No. 5:14-CV-187-OC-29PRL, 2015 WL 476183, at *3 (M.D. Fla. Feb. 5, 2015) (construing identical provision under the Section 1997(e) of the PLRA to bar claims based on "sexual contact" rather than a "sexual act");  *Woods v. United States*, No. 114CV00713MHHJHE, 2015 WL 9947694, at *3 (N.D. Ala. Dec. 11, 2015) (same), *report and recommendation adopted*, No. 1:14-CV-0713-MHH-JHE, 2016 WL 367947

---

[12] *See Harris v. Garner*, 216 F.3d 970, 980 (11th Cir. 2000) (*en banc*).

(N.D. Ala. Jan. 29, 2016); *Thompson v. Walsh*, No. 3:14CV246/MCR/EMT, 2018 WL 4102842, at *10 (N.D. Fla. July 19, 2018) (same), *report and recommendation adopted on other grounds as modified*, No. 3:14CV246/MCR/EMT, 2018 WL 4102250 (N.D. Fla. Aug. 28, 2018).

> As explained by the district court in *Jamison v. United States*,

> A statute's plain meaning must be enforced. The definition of the term "sexual act" contained in § 2246(2) is unambiguous. Whatever policies may underlie that definition—and its demarcations between the terms "sexual act" and "sexual contact"—the definition reflects a clear legislative choice to specifically exclude contact through clothing from the term "sexual act." In this case, therefore, no "sexual act" occurred. And in equally unambiguous statutory language, the United States declined to waive immunity under the FTCA for "sexual contact," even assuming "sexual contact" occurred.

*Jamison*, 2016 WL 7670690, at *5 (citations omitted).

Plaintiffs Goduto, Buchanan, Hoehn, Ursiny and Villalta-Garcia have each asserted claims premised on something other than a sexual act. In addition, the only conduct alleged at the Coleman Camp with respect to Plaintiff Guggino does not concern a sexual act. *See* Doc. 1 at ¶¶ 78-81 and Doc. 1-1 at 18-19 (Goduto); Doc. 1 at ¶¶ 64-65 and Doc. 1-1 at 13 (Buchanan); Doc. 1 at ¶¶ 99-103 and Doc. 1-1 at 25-26 (Hoehn); Doc. 1 at ¶¶ 138-39, 141 and Doc. 1-1 at 40-41 (Ursiny); Doc. 1 at ¶¶ 145-48 and Doc. 1-1 at 42-43 (Villalta-Garcia); Doc. 1 at ¶¶ 96-97 and Doc. 1-1 at 24 (Guggino). Each was also convicted of a felony and incarcerated at the time they filed their complaint. *See* Doc. 1 at ¶ 4 and Case No. 1:11-cr-230-001 (N.D. Ga.) (Goduto); Doc. 1 at ¶ 2 and Case No. 2:10-cr-118-002 (E.D. Tenn.) (Buchanan); Doc. 1 at ¶ 6 and Case No. 5:11-cr-00046-RS-2 (N.D. Fla.) (Hoehn); Doc. 1 at ¶ 12 and Case No.

11-cr-00181-CMA-01 (D. Colo.) (Ursiny); Doc. 1 at ¶ 13 and Case No. 5:10-cr-02146-001 (S.D. Tex.) (Villalta-Garcia); Doc. 1 at ¶ 13 and Case No. 8:11-cr-307-T-33AEP (M.D. Fla.) (Guggino).  Accordingly, these claims should be dismissed because the United States has not waived sovereign immunity for such claims.

While all of the conduct alleged by these Plaintiffs is reprehensible, it constitutes inappropriate sexual contact.  The alleged conduct is not a sexual act under 18 U.S.C. § 2246, and the United States has not waived sovereign immunity as to these claims.  Accordingly, each of Plaintiff Goduto, Buchanan, Hoehn, Ursiny and Villalta-Garcia's claims are subject to dismissal, as are Plaintiff Guggino's claims based on conduct at the Coleman Camp.

### D.     Ms. Guggino's claims based on conduct at FCI Tallahassee are time-barred.[13]

Under the FTCA, a claim is "forever barred" unless it is "presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b).  A claim under the FTCA generally "accrues at the time of injury." *Diaz v. United States*, 165 F.3d 1337, 1339 (11th Cir. 1999); *Harris v. Rambosk*, No. 2:18-CV-17-FTM-29MRM, 2018 WL 5085721, at *6 (M.D. Fla. Oct. 18, 2018).

Ms. Guggino brings claims premised on allegations of sexual misconduct occurring while she was incarcerated at FCI Tallahassee.  Doc. 1 at ¶¶ 83-94.  She began serving her sentence there in 2012. *Id.* at ¶ 84.  Ms. Guggino acknowledges that she left FCI Tallahassee some time in 2015, but she omits the specific date of transfer.

---

[13] Ms. Guggino is not the only Plaintiff who faces statute of limitations issues; the United States will address the remainder of these limitations issues on summary judgment.

*Id.* at ¶¶ 5, 94.  Her own filings with this Court[14] reveal that she was transferred to FCI Aliceville, in Alabama at least by August 26, 2015.  *See* Case No. 8:11-cr-00307-VMC-AEP (M.D. Fla.), Doc. 104.  Ms. Guggino alleges that she was then transferred to the Coleman Camp in April 2018.  Doc. 1 at ¶ 96.  As Ms. Guggino was no longer at FCI Tallahassee as of August 26, 2015, all of the alleged conduct must have occurred prior to that date.  Accordingly, based on the properly considered information at this stage of the case, the latest date for filing an administrative claim with BOP for the actions alleged to have occurred at FCI Tallahassee was August 26, 2017.  *See* 28 U.S.C. § 2401(b); *Diaz*, 165 F.3d at 1339.  Ms. Guggino did not present her administrative claim to the BOP until March 2019.  *See* Doc. 1-1 at 2.  Accordingly, Ms. Guggino's claims regarding the alleged conduct at FCI Tallahassee are untimely and are subject to dismissal.

Equitable tolling will not save Ms. Guggino's claims.  While the FTCA's time bar is subject to equitable tolling, *United States v. Kwai Fun Wong*, 575 U.S. 402, 419-20 (2015), equitable tolling is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); *see also Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him

---

[14] The Court may take judicial notice of such filings.  *See Atlantic Speciality Ins. Co. v. City of College Park, Ga.*, 319 F. Supp. 3d 1287, 1292 (N.D. Ga. 2018) (citing *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015)).

from bringing a timely action."). "The plaintiff bears the burden of showing that such extraordinary circumstances exist," and that they engaged in sufficient diligence. *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006); *Lenzy v. United States*, No. 2:14-CR-25-RWS-JCF-2, 2017 WL 4080476, at *2 (N.D. Ga. Aug. 2, 2017), *report and recommendation adopted*, No. 2:14-CR-25-2-RWS-JCF, 2017 WL 4075489 (N.D. Ga. Sept. 14, 2017). "The allegations supporting equitable tolling must be specific and not conclusory." *Van Johnson v. Georgia*, No. 118CV01690SCJJSA, 2018 WL 9708716, at *2 (N.D. Ga. Aug. 29, 2018), *report and recommendation adopted*, No. 1:18-CV-1690-SCJ, 2018 WL 9708717 (N.D. Ga. Oct. 15, 2018) (citing *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)). Because equitable tolling is an extraordinary remedy, it "should be extended only sparingly." *Arce*, 434 F.3d at 1261 (internal quotation marks omitted).

### 1.   Ms. Guggino has not alleged specific facts demonstrating diligence.

While "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence,'" a failure to show any diligence at all dooms a claim for equitable tolling. *United States v. Nunez-Villanueva*, No. 1:06-CR-529-1-TWT, 2013 WL 3283733, at *2 (N.D. Ga. June 28, 2013) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)); *Pryor v. United States*, No. CIV.A. 12-00411-WS-B, 2014 WL 7204870, at *5 (S.D. Ala. Dec. 17, 2014); *Milliner v. Bolling*, No. 118CV00687AKKSGC, 2019 WL 3773914, at *3 (N.D. Ala. July 8, 2019) (infrequent attempts to pursue remedies are insufficient), *report and recommendation adopted*, No. 118CV00687AKKSGC, 2019 WL 3776948 (N.D. Ala. Aug. 9, 2019). Ms. Guggino

34

has not alleged that she diligently pursued her right to file an administrative claim with BOP at any time within the limitations period.  For this reason alone the Court can deny Ms. Guggino equitable tolling.  *See Carlisle v. United States*, No. 5:10-CV-8018-SLB-HGD, 2013 WL 5328422, at *7 (N.D. Ala. Sept. 20, 2013) ("When faced with a time-barred petition and equitable tolling question, a court is not required to determine 'whether the facts establish' both prongs of the equitable tolling standard"); *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstance did not prevent the timely filing."); *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1289 (11th Cir.  2002) ("In the absence of any showing of his own diligence, Drew cannot be entitled to the rare and extraordinary remedy of equitable tolling.").

The court's decision in *Davis v. Jackson*, No. 15-CV-5359 (KMK), 2018 WL 358089 (S.D.N.Y. Jan. 8, 2018), is instructive.  In *Davis*, the district court accepted the general proposition that there may be circumstances where threats of retaliation could meet the extraordinary circumstances prong of the equitable tolling analysis. *Id.* at *7. The court nonetheless required the plaintiff to demonstrate reasonable diligence in pursuing his claims in light of the extraordinary circumstances. *Id.*  Specifically in the context of the claims of fear of retaliation, the district court looked for assertions of specific efforts to seek protection from these retaliatory threats, from, for example the superintendent or by raising his fears with his mental health providers, which it did

not find. *Id.* at \*7-\*8. Even if the Court assumes that Ms. Guggino has made sufficient assertions that Former Officer Urdialez's threats could serve as a basis for equitable tolling, her failure to allege that she took any efforts to protect herself from those threats of retaliation dooms her equitable tolling argument.

> ### 2. Ms. Guggino has not alleged facts showing "extraordinary circumstances" continued through the period which she seeks to toll.

Ms. Guggino's allegations also fall short of showing that "extraordinary circumstances" preluded her timely filing her administrative claim. While Ms. Guggino alleges that Former Officer Urdialez, who was stationed at FCI Tallahassee, warned her not to tell anyone when she was at FCI Tallahassee, Ms. Guggino was transferred out of FCI Tallahassee well before the statute of limitations expired in this case. In other words, even assuming under *Davis* Ms. Guggino has alleged enough facts to establish "extraordinary circumstances" at the time she was incarcerated at FCI Tallahassee,[15] she has not so alleged for the remainder of her period of incarceration, including the almost three years she spent at the Alabama facility. The Eleventh Circuit has specifically rejected claims for equitable tolling where the asserted basis for that tolling did not actually extend for the entirety of the period for which tolling is sought. *See Echemendia v. United States*, 710 F. App'x 823, 827 (11th Cir. 2017); *see also Gosselin v. Kaufman*, 656 F. App'x 916, 919 (10th Cir. 2016) (rejecting equitable tolling claim in Section 1983 context where after he was transferred to

---

[15] *But see Frasier-Kane v. City of Phila.*, 517 F. Appx. 104, 105-07 (3d Cir. 2013) (continued threats of harm and acts of intimidation by numerous colleagues insufficient to constitute extraordinary circumstances).

another facility outside the reach of the threatening individuals he still waited four months to bring his suit); *Flores v. Hedgpeth*, No. CV 08-03329 SJO (RZ), 2008 WL 4196629, at *9 (C.D. Cal. Sept. 10, 2008) ("Petitioner may have genuinely feared for his safety while in the three prisons and may genuinely have been unable for discrete periods to have pursued his court filings. But he has not demonstrated that, for several years between 2004 and 2007, he consistently was seeking to pursue his rights diligently and that extraordinary circumstances consistently stood in his way, in the sense that they were the cause of his inability to pursue his court filings in a timely manner."); *Hulon v. Dozier Sch. for Boys*, No. 3:16CV474/LAC/EMT, 2018 WL 2144498, at *2 (N.D. Fla. Apr. 9, 2018), *report and recommendation adopted*, No. 3:16CV474/LAC/EMT, 2018 WL 2138530 (N.D. Fla. May 9, 2018); *Williams v. Jones*, No. 1:16CV133/WTH/EMT, 2017 WL 1370774, at *6 (N.D. Fla. Mar. 13, 2017), *report and recommendation adopted*, No. 116CV00133WTHEMT, 2017 WL 1393705 (N.D. Fla. Apr. 13, 2017).

Because Ms. Guggino's claims related to the conduct alleged to have occurred at FCI Tallahassee are untimely, and she is not entitled to equitable tolling, those claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

For the foregoing reasons the Court should grant the United States' motion to dismiss as follows:

(1) The Court should dismiss without prejudice, or in the alternative sever, all claims brought by Plaintiffs other than Plaintiffs Beaubrun, Johnson, Mora,

and Watson for improperly bringing their claims together pursuant to the PLRA, and require each to file their own action and pay the filing fee or apply for IFP status;

(2) The Court should dismiss with prejudice each Plaintiffs' negligence *per se* claims and any other claims purportedly brought for a violation of PREA for failure to state a claim as PREA does not create a private right of action;

(3)  The Court should dismiss with prejudice Plaintiffs' negligent hiring, retaining, training, managing, disciplining, reporting and supervising claims because they are barred by the discretionary function exception;

(4) In the alternative, the Court should dismiss without prejudice Plaintiffs' negligent hiring and training claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6);

(5) The Court should dismiss with prejudice any claims premised on failure to investigate or failure to timely investigate by criminal investigatory agencies for lack of subject matter jurisdiction;

(6) The Court should dismiss with prejudice Plaintiffs' claims regarding retaliatory transfers and access to counsel for lack of subject matter jurisdiction because they have identified no analogous claim under Florida law for which a private party could be liable, and in the alternative, as to the retaliatory transfer claim because it is also barred by the discretionary function exception; and

(7) The Court should dismiss with prejudice all claims brought by Plaintiffs Goduto, Buchanan, Hoehn, Ursiny, and Villalta-Garcia, and those arising at

38

the Coleman Camp for Ms. Guggino, for lack of subject matter jurisdiction because the allegations do not assert sexual acts as the basis of the claims; and

(8) The Court should dismiss with prejudice Ms. Guggino's claims arising from conduct at FCI Tallahassee as untimely.

Dated:  March 12, 2020                 Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:     */s/ Adam R. Smart*
ADAM R. SMART
Assistant United States Attorney
USA No. 195
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7588
Email:  adam.smart@usdoj.gov

*/s/ Julie R. Posteraro*
JULIE R. POSTERARO
Assistant United States Attorney
USA No.  157
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
Facsimile: (407) 648-7588
Email:  Julie.Posteraro@usdoj.gov

39

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notice of the filing to the following CM/ECF participants:

Bryan E. Busch, Esq.
Christopher Y. Mills, Esq.
BUSCH, SLIPAKOFF,
MILLS & SLOMKA, LLC

James Angelo DeMiles
DEMILES LAW
3440 Hollywood Blvd., Suite 415
Hollywood, FL  33021-6933

Max G. Soren
DININ LAW GROUP, P.A.
4200 N.W. 7th Ave.
Miami, FL  33127

Philip L. Reizenstein, Esq
Reizenstein and Associates PA
2828 Coral Way-Ste 540
Miami, FL, 33145

         */s/ Adam R. Smart*
         ADAM R. SMART
         Assistant United States Attorney