## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

| | | |
|---|---|---|
| RACHELLE BEAUBRUN, | : | |
| KAYLA BUCHANAN, | : | |
| AMANDA DIMURO, | : | |
| KRISTEN GODUTO, | : | |
| KARA GUGGINO, | : | |
| SARA HOEHN, | : | Civil Action File |
| APRIL JOHNSON, | : | |
| MAGGIE LEON, | : | No. 5:19-cv-615-Oc-32PRL |
| REBECCA MORA, | : | |
| TERRY NAGY-PHILIPS, | : | |
| LAUREN REYNOLDS, | : | |
| ANN URSINY, | : | |
| CRISTIAN VILLALTA-GARCIA, | : | |
| KAREN WATSON, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR SEVER

COME NOW, Plaintiffs, and through undersigned counsel file this Joint Response in Opposition to Defendant's Motion to Dismiss or Sever (Doc. 25.) and show this Court as follows:

## I.    INTRODUCTION

Defendant seeks to dismiss Plaintiff's Complaint, or in the alternative to sever, under the theory that it is immune from civil liability under the Federal Tort Claims Act (the "FTCA"). However, Defendant's argument is legally flawed given that Plaintiffs have stated plausible claims against Defendant arising from the gross negligence and intentional misconduct of prison guards and administrators at the facilities operated by the Federal Bureau of Prisons.

1

## II.    <u>FACTUAL BACKGROUND</u>

Plaintiffs filed the instant action against Defendant pursuant to the FTCA asserting claims for negligence and negligence per se (Count I), assault and battery (Count II), false imprisonment (Count III), and intentional infliction of emotional distress (Count IV). (*See gen.* Doc. 1.) All Plaintiffs were incarcerated, or are currently incarcerated, in facilities operated by the Federal Bureau of Prisons (the "BOP"). (Doc. 1, at ¶¶ 1-14.) Plaintiffs are all female and were sexually assaulted, abused and harassed by male prison guards who were given unfettered and unsupervised one-on-one access to Plaintiffs despite prior instances of sexual misconduct by these guards against other female inmates. (*Id.* at ¶¶ 17-28.) The sexual abuse was frequently and easily perpetrated against Plaintiffs due to the negligence of the BOP in allowing male guards to have one-on-one solitary access to female inmates and exploit "blind spots" in the prison, i.e., locations in the prison where they knew video cameras would not be present. (*Id.* at ¶¶ 111-116, 126 and 161.) Plaintiffs' negligence claims are based in part on the following facts and theories: (1) Defendant's negligent hiring, retention, training, and supervision of the prison guards in question; (2) Defendant's failure to adequately investigate claims of sexual abuse and prosecute and punish those guards who perpetrated the abuse; (3) Defendant's allowance of male guards to have unrestricted and unsupervised one-on-one access to female inmates and failure to ensure the prison did not have blind spots where sexual abuse could occur undetected; (4) Defendant instituting policies that effectively punished female inmates for reporting abuse; and (5) Defendant instituting policies that made it virtually impossible for female inmates to receive legal counsel. (Doc. 1, at ¶¶ 17-28, 47-55, and 157-162.)

### III.   ARGUMENT AND CITATIONS TO AUTHORITY

    a.   Legal Standards

        i.   Subject Matter Jurisdiction

Congress created subject matter jurisdiction in Federal District Courts through the enactment of 28 U.S.C. §§ 1346 *et seq.* commonly known as the FTCA.  28 U.S.C. § 1346 expressly authorizes District Court subject matter jurisdiction for any claims arising from "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA was designed to ensure the United States is liable in the same manner or extent as a private individual where the wrong took place. *Beesley v. United States,* 3664 F. 2d 194 (10th Cir. 1966). These provisions allow an individual confined in federal prison to recover damages sustained due to the negligence of a government employee. *United States v. Muniz,* 374 U.S. 150, 154-156 (1963).

The FTCA is not without its own exceptions, namely those outlined in 28 U.S.C. § 2680. However, district courts have indicated that in evaluating a motion to dismiss, the court should look to the gravamen of the claim, not mere nomenclature. *See gen. Loritts v. United States,* 489 F. Supp. 103 (U.S. MA 1980) (although styled as a claim for assault, gravamen of claim was in negligence thus dismissal was improper). Moreover, where the government seeks a dismissal on the premise that a discretionary function exception applies, it bears the burden of establishing that defense. *Sexton v. United States,* 132 F. Supp. 2d 967, 971-972 (U. S. Fla. 2000). The discretionary function exception does not apply where a federal statute specifically outlines the

course of action a government employee must adhere to. *Id.* Courts analyzing the discretionary function exception must be careful to not "immunize every governmental act." *Id.* at 972. Thus, "Courts must exercise restraint in insulating the government from nearly all tort liability, because to do so would frustrate Congress' purpose in enacting the FTCA." *Id.*

ii.  F.R.C.P. 12(b)(6) Standard.

Plaintiff must plead "enough facts to state a claim to relief that is ***plausible*** on its face" in order to survive a motion to dismiss. *Anderman v. J.P. Morgan Chase Bank,* 2020 U.S. App. LEXIS 4154, *3-4 (11th Cir. February 11, 2020) citing to *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The pleadings are construed broadly so that all well-pleaded facts are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); *Doe v. Public Health Trust,* 696 F. 2d 901 (11th Cir. 1983).

The factual allegations in the complaint must be "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." *Anderman*, at *4, citing to *Twombly*, 550 U.S. at 555.  More particularly, a complaint should contain enough factual allegations to provide "'fair notice' of the nature of the claim" and the "'grounds' on which the claim rests." *Id.* citing to *Twombly*, 550 U.S. at 555 n.3. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Anderman,* at *4 quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). However, a motion to dismiss should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see Linder v. Portocarrero*, 963 F.2d 332 (11th Cir. 1992).

4

      b.   <u>The PLRA Does Not Prohibit Joinder of Similarly Situated Plaintiffs in the Same</u>
<u>Legal Action.</u>

Defendant's argument that Plaintiffs' Complaint must be dismissed because joinder is prohibited under the Prison Litigation Reform Act ("PLRA") fails as a matter of law and does not require the dismissal of the instant case. Defendant primarily relies on *Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) for the proposition that the Eleventh Circuit has held that the PLRA prohibits multi-plaintiff litigation.  However, this overly broad reading is flatly incorrect. *Hubbard* addressed the narrow issue of whether multiple indigent plaintiffs could avoid the PLRA's *in forma pauperis* fee provisions by dividing the fee amongst multi plaintiffs. *Hubbard*, at p. 1195-1196. The *Hubbard* court reasoned that the express language of the act required each plaintiff to pay the full filing fee, and that indigent plaintiffs cannot get around the filing fee requirement by joining with a plaintiff who can afford to pay the fee nor can the fee be shared among various plaintiffs.  *Id.* However, the *Hubbard* Court did not find that PLRA outright prohibits multiple plaintiffs from joining together. On the contrary, the *Hubbard* Court focused its analysis on the strict language of the PLRA as to the filing fee requirements for proceedings *in forma pauperis* **only**. *See gen.* 28 U.S.C. §1915. Extrapolating these requirements to all cases involving prisoners, would require this Court to graft language into the act where it doesn't exist. *C.f., Burke v. Helman,* 208 F.R.D. 246 (C.D. Ill. 2002)(motion to compel payment of filing fee by each plaintiff denied where court disagreed that the PLRA required each plaintiff in multiple plaintiff suit to pay entire amount of fee). Notably, Defendant does not cite to the express language of the PLRA. Likely, because the *in forma pauperis* filing requirement are inapplicable in the instant case.

Similarly, Defendant's reliance on *Garcia v. McNeil* is equally misguided. The *Garcia v. McNeil*, 4:07CV474-SPM/WCS, 2010 WL 4823370, at *2 (N.D. Fla. Aug. 12, 2010), *report and*

*recommendation adopted,* 4:07-CV-474-SPM WCS, 2010 WL 4818067 (N.D. Fla. Nov. 22, 2010) case is not an Eleventh Circuit court of appeals decision but rather an adopted magistrate recommendation interpreting *Hubbard* in an overly broad fashion. This Court should not rely on *Garcia* or Defendant's argument because it would be inapposite to the plain language of the PLRA. Furthermore, *Garcia* is not factually similar to the instant case. *Garcia* once again addressed prisoners proceeding *in forma pauperis* who wished to avoid the express fee provisions of the PLRA by arguing that the class action provisions of Fed. R. Civ. P. 23 governed.

Even if this Court were to find that the *in forma pauperis* requirements of the PLRA applied, the proper remedy would be to enter an order directing that each Plaintiff pay a separate filing fee. For example, the court in *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004) found that each prisoner joining in a multiple-prisoner civil action must pay the full filing fee in accord with the PLRA and to satisfy the financial incentive of the statute to deter frivolous prisoner litigation. *Boribourne,* at p. 855-866. District courts "must accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied." *Suarez v. A1*, Civil Action No. 06-2782 (JBS) (D.N.J. Dec. 13, 2006) (citing *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004)). Notably, the *Boriboune* court cited the Eleventh Circuit opinion in *Hubbard*, stating that *Hubbard*'s conclusion, that obliges "prisoners seeking to proceed *in forma pauperis* to pay one fee apiece", is correct. *Boribourne,* at p. 855. "[W]hich means that permissive joinder under Rule 20 turns out not to impair the PLRA's financial incentives after all." *Boriboune,* at 855 (citing *Hubbard,* 262 F.3d 1194 (11th Cir. 2001)). *Boriboune* concluded that "[i]nstead of adopting a no-joinder rule, the district court should have ensured that each of the four prisoners was assessed one full filing fee under § 1915(b)(1)."

The Northern District of Florida recently addressed *Hubbard.* In *Haile v. McCalvin*, 4:17CV460-MW/CAS, 2017 WL 5588201 (N.D. Fla. Oct. 19, 2017), *report and recommendation adopted,* 4:17CV460-MW/CAS, 2017 WL 5588178 (N.D. Fla. Nov. 20, 2017) the Court interpreted *Hubbard* as follows:

> In Hubbard v. Haley, 262 F.3d 1194 (11th Cir. 2001), the Eleventh Circuit Court of Appeals held that multiple prisoners could not join their claims together and proceed with in forma pauperis status **to divide** the filing fee. "[T]he intent of Congress in promulgating the PLRA was to deter frivolous civil actions brought by prisoners by requiring each individual prisoner to pay the full amount of the required fee." 262 F.3d at 1198. Thus, multiple prisoners may not bring a joint civil action if they proceed with in forma pauperis status as "the PLRA clearly and unambiguously requires" each prisoner to pay the full amount of a filing fee. *See* 28 U.S.C. § 1915(b)(1). Accordingly, Plaintiff may not bring this case with other named Plaintiffs. Plaintiff is well aware of that fact because he has previously had other cases summarily dismissed by the Middle District of Florida. *See* document 4 of case # 8:17cv2296-VMC-JSS; document 3 of case # 6:17cv01697-PGB-TBS; and document 3 of case # 3:17cv01084-MMH-JBT. *Id.* at *1 (emphasis added).

It follows then, that the *Haile* court interpreted *Hubbard* to mean that prisoners proceeding *in forma pauperis* could not join their claims for the purpose of dividing the filing fee. In the instant case, there is no desire to divide the filing fee, Plaintiffs are not seeking to proceed *in forma pauperis,* and it is a technical procedural issue that can be rectified if even found to be applicable. Moreover, the instant case clearly meets the joinder requirements under Fed. R. Civ. P. 20. The claims of all Plaintiffs raise common questions of law and arise from the same series of occurrences making them appropriate for joinder in one civil action. *See Suarez v. A1*, Civil Action No. 06-2782 (JBS) (D.N.J. Dec. 13, 2006) (plaintiffs allowed to join in one action where permissive joinder is practicable and would promote judicial economy).

      c.   Defendant's Motion to Dismiss Must be Denied Because Plaintiffs' Action is Not Based on PREA.

Defendant contends that Plaintiffs' claims should be dismissed as they are based on the Prisoner Rape Elimination Act (the PREA"). However, Defendant's argument misstates the causes of action set forth in the Complaint. As discussed *supra,* FTCA confers jurisdiction on federal district courts for claims arising from "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the [g]overnment while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

Here, Defendant argues that Plaintiff cannot establish a prima facie case for negligence or negligence per se because PREA does not create any independent causes of action. However, Plaintiffs are not suing Defendant for their violations of PREA as Defendant argues in its motion. Instead, Plaintiffs assert negligence claims based on Defendant's breach of its duty to maintain the safety and wellbeing of Plaintiffs while they served their sentences. Plaintiffs simply cite to the PREA requirements regarding sexual misconduct and Defendant's violations thereof to support their claim that Defendant owed a duty of care to Plaintiffs and breached that duty.

The reliance on PREA to show a duty of care is not a novel concept. The 11th Circuit recently used PREA safety standards as a way to evaluate a Georgia prison's duty of care and breach thereof. *See Green v. Hooks,* 2020 U.S. LEXIS 834, *3-4 (11th Cir. January 6, 2020). In *Green*, the 11th Circuit Court found that a Georgia prison properly applied the PREA screening standards regarding identification of potential victims and/or perpetrators of sexual abuse when screening a transgender woman. *Id.* at *23-25. The prison's application of the PREA screening standards did not flag the transgender woman as a potential victim or perpetrator of sexual abuse so she was assigned to a male prison. *Id.* Thereafter, the transgender woman was raped by

another inmate. *Id.* The *Green* court found that the transgender woman could not prove that the prison breached its duty of care towards her safety because it properly followed the PREA screening protocols. *Id.* It follows then, that Plaintiffs can rely on the requirements of PREA to establish the duty of care owed by Defendant while they are serving their sentences.

Under Florida law, a plaintiff must show that the defendant owes a legal duty, that defendant breached that duty and said breach caused injury to plaintiff and damages flowed from that injury. *Paterson v. Deeb,* 472 So. 2d 1210, 1214 (Fla. 1st DCA 1985). Here, Plaintiffs have stated  facts to show a plausible negligence claim  under Florida law, a duty of care while in Defendant's custody and Defendant's subsequent breach of those duties. At this stage of the process,  the Plaintiffs must plead "enough facts to state a claim to relief that is ***plausible*** on its face". *Anderman,* 2020 U.S. App. LEXIS 4154 at *3-4. Plaintiffs have met this basic requirement. PREA outlines minimum expectations for the safety and wellbeing of inmates while in custody. The allegations of the Complaint detail numerous instances of Defendant's breach of its prescribed duties. (*See gen.* Doc. 1.) Accordingly, Defendant's Motion to Dismiss must be denied.

      d.   <u>The Discretionary Function Defense Does Not Bar Plaintiffs' Claims in this Action.</u>

Defendant's argument that Plaintiffs' claims must be dismissed because it is immune from claims under the discretionary function exemption fails as a matter of law. Although Plaintiffs bear the initial burden of proof on subject matter jurisdiction, the burden of proving the applicability of the discretionary function exemption as an affirmative defense falls upon Defendant. *Sexton*, 132 F. Supp. 2d at 971-972.  The discretionary function exception does not apply where a federal statute specifically outlines the course of action a government employee must adhere to. *Id.* Courts analyzing the discretionary function exception must be careful not to

"immunize every governmental act." *Id.* at 972. Thus, "Courts must exercise restraint in insulating the government from nearly all tort liability, because to do so would frustrate Congress' purpose in enacting the FTCA." *Id.*

Here, Defendant contends that it is insulated from liability because employment and termination choices are discretionary and thus it remains immune to Plaintiffs' claims. However, Congress enacted PREA and other statutes to set a minimum standard that corrections officials **must** comply with for the safety of inmates. Defendant cannot attempt to shield itself from responsibility by arguing that its decision in hiring sexual predators falls within this limited discretionary exception. On the contrary, Courts have held that "[j]ail administrators are not permitted to 'bury their heads in the sand' and ignore…obvious risks to the inmate population they have an affirmative duty to protect." *Walton v. Dalton,* 752 F.3d 1109 (8th Cir. 2014). "Jail officials who provide 'no training' on sexual abuse and leave their employees 'virtually unsupervised' are deliberately indifferent to the substantial risk that jailers might abuse detainees." *Drake v. City of Haltom City*, 116 F. App. 897, 900 (5th Cir. 2004).

In the instant case, Plaintiffs have alleged that prison officers engaging in sexual abuse lacked proper training and were not properly supervised or disciplined. (*See gen.* Doc. 1.) Plaintiffs further alleged that correctional officers were provided unrestricted and unsupervised access to Plaintiffs despite previous complaints of sexual misconduct. (*Id.* at ¶ 17-28, and 46). These prisons created a system of retaliation, threats, and coverups that prevented Plaintiffs from reporting instances of sexual misconduct which directly resulted in subsequent injuries to Plaintiffs. (*Id.* at ¶¶ 46-50.) Here, Defendant cannot avoid liability by arguing that the correctional officers' criminal conduct had an 'element of judgment or choice' so as to render Defendant immune. Plaintiffs' factual allegations about Defendant's systematic and willful

ignorance of the most basic safety standards are sufficient to establish a plausible claim against Defendant.

Moreover, the FTCA provides in Subsection 2680 (h) that with regard to acts or omissions of investigative or law enforcement officers of the United States Government "the general waiver of sovereign immunity in the FTCA appl[ies] to any claim arising…out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."  As such, assault and battery (Count II), false imprisonment (Count III), and intentional infliction of emotional distress (Count IV) survive under the plain language of the FTCA. *See Millbrook v. United States,* 569 U.S. 50 (2013) (holding that the FTCA waives sovereign immunity for intentional torts).

It is important to note that courts have held that qualified immunity offers protection to *individual* public officers performing discretionary functions "insofar as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sherrad v. Johnson,* 607 F.3d 1359, 1363. Both the State of Florida and the Federal Government have policies articulating that correctional officials have **no right** to engage in any sexual acts with inmates. Thus, Defendant cannot argue that it has discretion in permitting criminal sexual assault to continue at its prison facilities.

Likewise, Defendant cannot hide behind a discretionary exemption argument where no correctional officer has the discretion to engage in sexual acts with an inmate, nor do the prisons have the discretion to create a system protecting such criminal conduct. In evaluating the discretionary exemption arguments advanced by Defendant, this Court should focus on "whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Hughes v. U.S.,* 110 F.3d 765, 768 (11th Cir.1997).  Here, the law

clearly prohibits the correctional officers from engaging in sexual assault of inmates. *Id. at* 678. As such, Defendant's argument that it is immune from suit must fail.

Similarly, Defendant's argument that federal statutes cannot provide a basis for claiming a breach of duty must also fail. Here, Defendant relies on *Johnson v. Sawyer* for the proposition that  federal statutes cannot provide the basis for a claim alleging breach of duty by correction officials. However, this interpretation is fundamentally flawed. The *Johnson* Court concluded, that "even where the specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act <u>if</u> state law recognizes no comparable private liability." *Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995). However, the *Johnson* Court did <u>not</u> conclude that a violation of the federal statute provides no standard of conduct, instead it found that the violation of the standard of conduct must also support a state cause of action in tort. *Id.* at 727-433.

The conduct of Defendant's correctional officers supports Plaintiffs' claims both in negligence, as discussed supra, and in tort under state law. In the instant case, Florida Statute 944.35 expressly prohibits correctional officers from engaging in sexual misconduct with inmates. It follows then, that federal corrections employees who do not conform to the PREA standards and engage in sexual acts with an inmate are also guilty of breaching  Florida State law.

Similarly, pursuant to 18 USC Section 2243 (b), correctional officers and guards are statutorily precluded from engaging in sexual acts with **any** inmates. 18 U.S.C. § 2243 (b) provides that "[w]hoever… in a Federal prison…knowingly engages in a sexual act with another person who is (1) in official detention; and (2) under the custodial, supervisory, or disciplinary authority of the person so engaging;…shall be fined under this title, imprisoned not more than 15

years, or both." This language clearly and unambiguously makes it a crime to engage in sexual activity with a prisoner. Both these statutes remove all doubt as to the impropriety of the correctional officers. Thus, while Defendant can argue that corrections authorities are relying on their discretionary powers to determine how to supervise the inmates of the corrections facility, the language of Section 2243 (b) makes it clear that they are simply not authorized to use discretion in permitting sexual acts against inmates.

Lastly, Defendant's argument that Plaintiffs cannot assert a claim for negligent hiring because they have not alleged that Defendant knew of any misconduct by the correctional officers *prior* to being hired fails as a matter of law. Under Florida law, a party may recover for negligent hiring or negligent retainment against an employer for injuries sustained as a result of an act outside the scope of employment by an employee  where the employer knew or should have known of the employee's unfitness for the job and fails to take further action.  *Garcia v. Duffy,* 492 So. 2d 435 (2d DCA 1986). Here, Plaintiff has articulated that despite management's knowledge of sexual misconduct by these specific officers, they were permitted unrestricted and unsupervised access to Plaintiffs which directly resulted in their injuries. (Doc. 1, at 17-28). Accordingly, Plaintiffs have stated a plausible claim and Defendant's motion must be denied.

e.   Failure to Investigate Sexual Abuse

Defendant's contention that Plaintiffs' claims arising from the failure to investigate must be dismissed because decisions to investigate, prosecute or enforce are inherently discretionary also fails. Plaintiffs' claims do not arise from law enforcement's failure to prosecute. Instead, Plaintiffs' claims arise from Defendant's consistent failure to meet its duty to ensure the safety on inmates. The BOP and prison officials are responsible for the housing and safety of inmates. *See Diamond v. Owens*, 131 F. Supp. 3d. 1346, 1376 (M.D. Fla. 2015).  Moreover, an inmate

may bring an action under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, due to negligence. *United States v. Muniz*, 374 U.S. 150, 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963). Notably, courts in other contexts have held that a failure to investigate allegations of sexual abuse can constitute a basis for negligence. *See gen. Doe v. School Board*, 403 F. Supp.  3d. 1241, 1266 (S.D. Fla. 2019). The rationale behind such decisions being that negligent investigation and response could proximately cause a plaintiff's harm. *Id*. Here, Plaintiffs' Complaint alleges that Defendant was negligent, in part, by failing to adequately investigate allegations of sexual abuse which could have prevented the later sexual assaults suffered by Plaintiffs at the hands of repeat sexual predators. More particularly, a full investigation of Officer Palomares (who abused 10 of the plaintiffs) would have revealed was a known sexual predator and could have prevented subsequent attacks. (*See gen.* Doc. 1 at ¶ 21.)

This Court should not be persuaded by Defendant's attempt to mischaracterize Plaintiff's claims by restating Plaintiff's allegations under different theories instead of the negligence claims actually asserted. Yet, even under different theories, Defendant is not entitled to absolute immunity. In *Heckler v Chaney*, inmates brought action to compel Food and Drug Administration to take enforcement action under the Federal Food, Drug, and Cosmetic Act with respect to drugs used for lethal injections used to carry out the death penalty. *Heckler v. Chaney*, 470 U.S. 821 (1985). Although the Court ultimately held that such specific decisions were traditionally committed to agency discretion, immunity is not absolute: "[W]e emphasize that the decision is only presumptively unreviewable; the presumption may be rebutted **where the substantive statute has provided guidelines for the agency to follow** in exercising its enforcement powers." *Id.* at 832-833. Emphasis added. In the instant case, PREA provides ample

guidelines regarding sexual misconduct and the safety of inmates. *See also United States v. Hall*, 559 F.2d 1160 (9th Cir. 1977) (prosecutorial discretion not absolute); *Adams v. Richardson* 156 U.S. App. D.C. 267, 480 F.2d 1159 (1973) (same). As such, Defendant's Motion must be denied.

      f.  <u>Plaintiffs' Have Sufficiently Pled Negligence Regarding Defendant's Transfer of Inmates and Denial of Access to Counsel</u>

Defendant's contention that Plaintiffs claims arising from the transfer of inmates and access to counsel fail to state a claim again fails. Plaintiffs are not asserting stand-alone claims for retaliatory conduct against Defendant. Instead, Plaintiffs have asserted the factual background regarding how Defendant's conduct continually violated their duties and obligations under PREA and Florida law. Defendant's negligence is evidenced, in part, by Defendant allowing prison staff to implement a system of retribution for all inmates who dared report instances of sexual assault by causing those who do report to be subject to immediate transfer to higher security state prisons where victims are cut off from family, friends and access to investigators. (Doc. 1 at ¶¶ 45, and 49-52.) Defendant's actions intentionally discouraged reporting instances of sexual abuse and are part and parcel of Defendant's failure to ensure the safety of its inmates. As discussed supra, the Court in *Heckler* recognized that the cases involving agency discretion do not support a claim of absolute discretion, but merely a presumption of immunity, which can be overcome "where it could justifiably be found that the agency has "consciously and expressly adopted a general policy" that is so extreme as to amount to an abdication of its statutory responsibilities." *Heckler*, 470 U.S. 821 at n. 4.

Here, the Plaintiffs have pled facts showing that the Coleman Management Team, the FCI Tallahassee Management Team, and the Prison Investigative Agencies had consciously and expressly adopted a general policy that was so extreme as to amount to an abdication of their statutory responsibilities under PREA to follow specific procedures related to the enforcement of

the zero tolerance policy. (Doc. 1 at ¶¶ 45, and 49-52.) The sweeping action of transferring sex victims to a state court prison facility thwarted the investigation into the allegations of sexual abuse by prohibiting any real investigation from taking place at all. This is in direct violation of the zero-tolerance policy and the prohibition against punishing the sex victims with involuntary segregated housing, loss of their privileges and work permits. Accordingly, Defendant's Motion to Dismiss must be denied.

g.   Prohibited Sex Acts

Defendant's argument that the claims by Plaintiffs Goduto, Buchanan, Hoehn, Ursiny, Villatia-Garcia and Guggino (collectively, the "Six Victims") must be dismissed because they did not allege a "sexual act" fails outright. Contrary to Defendant's characterization, the Six Victims allege conduct that  encompasses the definition of prohibited sexual acts for purposes of this motion to dismiss. 18 U.S.C. Section 2246(c) defines the "sexual act" as penetration of any kind "however slight" of hands or fingers into the "genital opening".  All Six Victims specifically allege the prison officials groped them by rubbing and grabbing or penetrating their genitals. (Doc. 1, at ¶¶ 78-83, 87-91, 99-104, 138-143, and 144-149.) Such sexual misconduct is a "sexual act" when during the course of the assault the officer inserted their hand, fingers, genitals, mouth, or other object into the genital opening of the Six Victims, no matter "however slight" or whether the penetration was under or over clothing.

Defendant seems to take the position that it is immune from the acts inflicted upon the Six Victims because none are under sixteen and have not explicitly plead rape or genital to genital penetration. However, the definition of "sexual act" clearly encompasses  any kind of penetration "however slight" of hands or fingers into the "genital opening". 18 U.S.C. § 2246 (c). Moreover, a 'de minimis' argument regarding injuries as a result of these sexual acts would be a

question of fact, and not whether a proper claim has been plead.  *See gen. DOE v. United States 976 F. 2d 1071* (7th Cir. 1991) (holding that children abused in a government day care center could sue for sexual contact). *See also* BOP Program Statement P5324.11 entitled "Sexually Abusive Behavior Prevention and Intervention." Lastly, the Six Victims contend that the damage sustained as a result of these sexual acts inflicted upon them resulted in physical trauma along with mental and emotional distress. (Doc. 1, at ¶¶ 78-83, 87-91, 99-104, 138-143, and 144-149.) Simply put, Defendant cannot minimize the injuries sustained by the Six Victims by arguing that their injuries 'were not that bad'. Defendant's motion to dismiss must be denied.

> h.   Equitable Tolling Should Be Applied to Ms. Guggino's Case

The law on equitable tolling is well established.  It is designed to provide relief for persons who missed the filing date set by the statute of limitations through no fault of their own. As the appellate courts have held, "The statute of limitations must not be applied too harshly…." *Jones v. Davis,* 922 F.3d 271, 278 (2019).   Furthermore, equitable tolling is granted when a "strict application of the statute of limitations would be inequitable.  *Rx.com v. Media Health Solutions, Inc.,* 558 U.S. 992 (2009). The court looks to see if the Plaintiff used reasonable diligence in filing his or her case.  *Jones* at 279.  The elements of equitable tolling are 1) a complaint filed passed the deadline established by the statute of limitations, 2) an extraordinary circumstance that caused the Plaintiff to miss the date not caused by the Plaintiff and are unavoidable,  3) and due diligence in filing a claim after the statute of limitations had passed. While the Defendant has asked this Court to set a hard and fast standard to decide whether or not to grant equitable tolling, the appellate court have said it must be "based on a flexible case by case analysis. *Jones at* 278.

17

Despite the desperate arguments of the Defendant, Plaintiff Guggino has alleged facts which caused her to miss the statute of limitations deadline that meet the extraordinary circumstances necessary to defeat a Motion to Dismiss.  Ms. Guggino alleges that she was subject to a series of continuous criminal acts by Defendant's correctional officers while she was held as a prisoner at FCI Tallahassee. (Doc. 1 at ¶ 91-98.)  She was transferred to FCI Aliceville in Alabama and then to Coleman in Florida in 2018, when she presented her claim.  The Defendant argues that she should have filed her case at FCI Tallahassee or upon transfer to Aliceville. This argument completely ignores the reality of Ms. Guggino's imprisonment, including the threats, reprisals, punishments, destruction of property, and access to outside agents that could assist with her claims.

In particular, Ms. Guggino alleged that when FCI Tallahassee prison officials became aware of the continues sexual abuse perpetrated on her by Mr. Ordialez, prison administrators punished her by placing her in the special housing unit which resulted in her having a 23 hour a day lockdown with no phone or email privileges. (Doc. 1 at ¶¶ 91-98.) These restrictions were strategically administered by Defendant as retribution against Ms. Guggino and intended to dissuade her from reporting details of the abuse.  Combined with the direct threats from Mr. Ordialez against her family and his contention that he had "friends" in all parts of the prison system that would ensure immediate retribution for any disclosures of sexual misconduct, Ms. Guggino was coerced and threatened into submission while Mr. Ordialez was protected by Defendant.  (cite to complaint) Thus, her decision not to proceed with a claim while at FCI Tallahassee was not only reasonable but based on valid concerns over the way the Defendant reacted to the news of sexual misconduct.

18

Upon arriving at the Aliceville facility, Ms. Guggino discovered that most of her personal belongings had been confiscated, including her journal which detailed the instances of sexual abuse that she had endured in Tallahassee. (Doc. 1 at ¶ 95.) Furthermore, she was placed in the special housing unit for weeks at a time and denied all contact with the outside world.  (Doc. 1 at ¶¶ 91-98.)  Certainly, these facts evidence that the correction officials in Alabama were aware of what had happened in Tallahassee and were immediately engaged in conduct that would discourage Ms. Guggino from making any claims.

The case of *Echemendia v. United States,* 710 F. App'x 823, 827 (11th Cir. 2017) cited by the Defendant is not on point with the facts presented here.  In *Echemendia* the Plaintiff used his injury and hospitalization as an excuse for missing the statute of limitations. The court rejected this because the disability did not extend through the entire two-year statute of limitations. Here, Ms. Guggino has alleged that she was in fear of bringing the action for the entire time period that she is requesting that the statute of limitation be extended. Ms. Guggino was only in a position to prosecute her claim after she was transferred to Coleman as she discovered a large number of women were prepared to make claims of sexual improprieties as part of a protected group.

Instead, this case is more akin to *Arce v. Garcia,* 434 F.3d 1254 (11th Cir. 2006).  In that case refugees from El Salvador sued individual defendants in the United States District Court for the Southern District of Florida for atrocities committed in El Salvador pursuant to the Alien Tort Claims Act which allowed them to sue in the U.S. courts. The defendants in *Arce* claimed that the plaintiffs filed their case after the expiration of the statute of limitations. *Id.* at 1260-1262. The plaintiffs explained that they feared reprisals against their families that remained in El Salvador if they had filed against the defendants who were associated with the ruling party. *Id.*

The 11th circuit found that this fear of reprisal was an extraordinary circumstance that justified waiting until the regime had fallen before filing the claims against the individual defendants. *Id.*

The facts in the instant case in light of the *Arce* decision show that Ms. Guiggino was subject extraordinary circumstances existed that were specifically designed to suppress Ms. Guggino from exercising her rights to bring her claim. Not only had her family been threatened, she was subjected to threats of punishment, and endured actual punishment and restrictions designed to make it almost impossible for Ms. Guggino to exercise her rights. These facts are certainly sufficient to establish that Ms. Guggino had a reasonable belief that if she had made her complaint either while in Alabama or Tallahassee that she would be subject to harsh treatment within the prison system.  The facts as alleged clearly establish a prima facie showing of extraordinary circumstances that would allow equitable tolling to exist.

## IV.    CONCLUSION

Defendants Motion to Dismiss must be summarily denied. A motion to dismiss should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46. Here, Plaintiffs have asserted enough facts to state a claim that is plausible on its face thus meeting the requirements of *Iqbal,* 556 U.S. at 678. When construed broadly so that all well-pleaded facts are accepted as true, and all inferences are viewed in a light most favorable to the plaintiffs, Defendant's Motion to Dismiss is without merit.

Moreover, the Complaint clearly articulates that this Court has subject matter jurisdiction to resolve Plaintiffs' claims. When looking at the gravamen of Plaintiff's claims, it is clear that Defendant lacks immunity. Moreover, the discretionary function does not help Defendant immunize itself from the repeated sexual assaults sustained in its prisons with its knowledge by

Plaintiffs. Thus, this Court should "exercise restraint in insulating the government from nearly all tort liability, because to do so would frustrate Congress' purpose in enacting the FTCA." *Sexton v. United States,* 132 F. Supp. 2d at 971-972.

**WHEREFORE,** Plaintiffs respectfully request the entry of an order denying Defendant's Motion to Dismiss.

This 9th day of April 2020.

<div style="margin-left:40%">

Respectfully submitted,

**BUSCH, SLIPAKOFF, MILLS & SLOMKA, LLC**

By: */s/Bryan E. Busch*
BRYAN E. BUSCH (*Pro Hac Vice*)
Georgia Bar No. 006055
bb@bsms.law
3350 Riverwood Parkway, NE
Suite 2100
Atlanta, Georgia 30339
(404)800-4064 (Telephone)

By: /s/ Christopher Y. Mills
CHRISTOPHER Y. MILLS
Florida Bar No. 72207
cm@bsms.law
319 Clematis Street
Suite 109
West Palm Beach, Florida 33401

*Counsel for Plaintiffs Rachelle Beaubrun, Kayla Buchanan, Kristen Goduto, Kara Guggino, Sara Hoehn, April Johnson, Terry Nagy-Philips, Ann Ursiny, Cristian Villata-Garcia, and Karen Watson.*

</div>

**DININ LAW GROUP, P.A.**

By: */s/ Max G. Soren*
Max G. Soren, Esq.
Florida Bar No.: 623431
inbox@dininlawgroup.com
4200 NW 7th Avenue
Miami, Florida 33127
(786) 431-1333 (Telephone)

*Counsel for Plaintiffs Amanda Dimuro,*
*Rebecca Mora, and Lauren Reynolds*

**DEMILES LAW, P.A.**

By: */s/ James A. DeMiles*
James A. DeMiles, Esq.
Florida Bar No. 15974
James@DeMilesLaw.com
3440 Hollywood Blvd., Suite 415
Hollywood , Florida 33021-6933
(954) 241-4246 (Telephone)

Counsel for Plaintiffs *Amanda Dimuro,*
*Rebecca Mora, and Lauren Reynolds*

**REIZENSTEIN AND ASSOCIATES, P.A.**

By: */s/ Philip L. Reizenstein*
Philip L. Reizenstein, Esq.
Florida Bar No. 634026
Philreizenstein@protonmail.com
2828 Coral Way
Suite 540
Miami, Florida 33145
(305) 444-0755 (Telephone)

*Counsel for Plaintiff Maggie Leon*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 9, 2020, I electronically filed the foregoing with the

Clerk of the County by using the CM/ECF electronic filing system, which will send notice of the

filing to the following CM/ECF participants:

Adam R. Smart
Assistant United States Attorney
USA No. 195
Julie R. Posteraro
Assistant United States Attorney
USA No. 157
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone: (407) 648-7500
adam.smart@usdoj.gov
Julie.Posteraro@usdoj.gov
*Counsel for Defendant*


*/s/ Bryan. E. Busch*
BRYAN E. BUSCH